FILED
2012 Oct-09  AM 10:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **ARIEL WYNN, by and through her next friend Regina Wynn,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:12-CV-742-VEH** |
| ) | |
| **CITY OF TALLADEGA BOARD OF EDUCATION, DOUGLAS CAMPBELL, In his official capacity as SUPERINTENDENT OF TALLADEGA CITY SCHOOLS, and Douglas Campbell in his individual capacity,** ) | |
| ) | |
| **Defendants.** ) | |

---

## <u>MEMORANDUM OPINION</u>

THIS CAUSE is before the court on the Defendants' Motion to Dismiss (Doc. 4) (the "Motion") for failure to state a claim. Plaintiff timely responded to the Motion on August 28, 2012. (Doc. 8.) Defendants submitted a reply on September 4, 2012. (Doc. 9.) The Motion is now ripe for disposition.

## I.    BACKGROUND[1]

---

[1] The court must view the factual allegations of the complaint in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Therefore, the court states the facts in the light most favorable to Plaintiff, drawing all reasonable inferences in her favor.

### A.    Factual Allegations of the Complaint

Ariel Wynn ("Wynn"), an African-American female, is a former student at Talladega High School.  She has an excellent academic record and was a member of the National Honor Society.  She served as a cheerleader and was elected by her classmates as Miss Talladega High School.  In her first eleven and a half years of school, Wynn had a spotless disciplinary record.

That changed half-way through her senior year.  On December 15, 2011, Wynn attended a basketball game between Talladega High School and Anniston High School.  The Complaint does not disclose whether Anniston and Talladega are "rivals."  Nor does the Complaint disclose exactly who threw the first punch or why.  But, it is clear that a brawl broke out involving students and alumni of both schools.  Wynn did not participate in the brawl, meaning she did not throw a punch nor did she attempt to defend herself.  Wynn did help a friend who was injured in the fray.

After the brawl, a vice principal questioned Wynn.  In a written statement, Wynn denied any participation in the fight.   The school principal also questioned Wynn on January 16, 2012.  She again denied any participation.  The principal then falsely told Wynn that she was on camera participating in the brawl and insisted she admit that she participated.  Wynn maintained her innocence.

2

Nonetheless, the principal suspended Wynn for five (5) days, gave her in-school suspension for five (5) days, removed her title of Miss Talladega High School, kicked her off the cheerleading squad, and put her on probation from the National Honor Society.  Wynn appealed to the Defendant Superintendent Douglass Campbell, who affirmed her punishment.  She then appealed to the Defendant, the City of Talladega Board of Education (the "Board").

The Board held a hearing on Wynn's appeal on February 13, 2012.  Both sides were allowed to present witnesses but neither side was allowed to cross examine them.  The school principal testified on behalf of Superintendent Campbell.  The principal said that Wynn had admitted to someone (it is not exactly clear who) that she participated in the brawl and that two teachers heard Wynn admit to participating in the brawl.  (Doc. 1 at 3.)   Conversely, a police officer, who was on the scene the night of December 15, 2011, testified that Wynn was not involved in the brawl.  Another student, who had admitted to participating in the fight, testified that she was not suspended.  Initially, the Board found it had insufficient information to decide Wynn's appeal.  The Board then met privately with Superintendent Campbell.  After that meeting, the Board affirmed the Superintendent's decision in a three to two vote.  The members who voted to affirm are white; the members who voted to reverse are black.

**B.      Claims Asserted and Relief Sought**

Wynn's Complaint includes two (2) counts.  However, Count One consists
only of factual allegations.  It does not identify a claim for relief nor ask the court
to grant any relief.  Therefore, the court will treat Count One as background
factual information rather than a claim for relief.

Count Two alleges the Defendants deprived Wynn of rights guaranteed by
the Fourteenth Amendment in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985.
Specifically, Wynn alleges the Defendants denied her substantive and procedural
due process when they discussed her appeal ex parte and behind closed doors. The
Complaint also suggests that the Defendants deprived Wynn of substantive and
procedural due process when they affirmed her suspension and punishment.
Finally, the Complaint alleges that the Defendants denied Wynn equal protection
under the law because other students, who admitted their participation in the
December 15th brawl, were not suspended or disciplined as harshly as Wynn.

Wynn seeks injunctive relief as well as money damages.  First, Wynn asks
this court to enjoin the Board from utilizing policies which will deprive students
of their right to an open and fair hearing.  Wynn also asks this court to reinstate
her title of Miss Talladega High School, restore her to her position on the
cheerleading squad, set aside any punishment she has received from the National

Honor Society related to the fight and suspension, and set aside her suspensions and expunge her disciplinary record.  Wynn requests money damages for her mental and emotional distress as well as punitive damages, attorney's fees, and costs.

## II.    STANDARD FOR MOTION TO DISMISS

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955  (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of her entitlement to relief, Rule 8 does not mandate the inclusion of detailed factual allegations within a complaint. *Twombly*, 550 U.S. at 555 (citing *Conley*, 355 U.S. at 47, 78 S. Ct. 103).  However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (emphasis added). The court therefore "accept[s] as true the facts set forth in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680; 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted)

## III.   ANALYSIS

To survive the Defendant's Motion to Dismiss, Wynn's Complaint must allege facts which plausibly indicate that the Defendants violated her constitutional rights. The Defendants contend that the facts in Wynn's Complaint, even when viewed in

the light most favorable to her, fail to state a constitutional violation.  (Doc. 5 at 18.)

Before the court can analyze whether Wynn's Complaint properly states a claim for

a violation of the Fourteenth Amendment, the court must examine Wynn's standing

to seek some of her requested relief.

### A.   Mootness

This court must *sua sponte* inquire into its subject matter jurisdiction whenever

it may be lacking.  *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th

Cir. 1999).  Regarding mootness, the Eleventh Circuit has explained:

> Article III of the Constitution limits the jurisdiction of the federal courts
> to the consideration of certain "Cases" and "Controversies."   The
> doctrine of mootness is derived from this limitation because an action
> that is moot cannot be characterized as an active case or controversy.
> "[A] case is moot when the issues presented are no longer 'live' or the
> parties lack a legally cognizable interest in the outcome."  Any decision
> on the merits of a moot case would be an impermissible advisory
> opinion.

*Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997) (citations

omitted).  In her Complaint, Wynn seeks a prospective injunction prohibiting the

Board from "utilizing policies which will abrogate the rights of students coming

before it from receiving fair and impartial hearings when they come before them."

(Doc. 1 at 5.)  However, Wynn graduated from high school in May 2012.

Therefore, she no longer has a legally cognizable interest in the policies the Board

uses for its students. *Adler*, 122 F.3d at 1447. Wynn essentially concedes this issue in her Response to the Defendant's Motion to Dismiss. (Doc. 8 at 5–6.) Similarly, because Wynn is no longer a student at Talladega High School, the court cannot reinstate her to the cheerleading squad or any other extracurricular activities. Therefore, to the extent Wynn's claims request an injunction prohibiting the Board from utilizing policies which will result in unfair and impartial hearings, her claims are **MOOT**. To the extent Wynn's claims request her reinstatement to the cheerleading squad and extracurricular activities, her claims are also **MOOT**.

### B.    Substantive Due Process

The Substantive Due Process Clause[2] of the Fourteenth Amendment "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992) (internal quotation marks omitted). The Clause limits a state's power to abridge those rights which are "fundamental, that is, . . . implicit in the concept of ordered liberty." *Lewis v.*

---

[2] The Due Process Clause of the Fourteenth Amendment protects both substantive and procedural rights. The text of the Constitution does not distinguish between "substantive" and "procedural" Due Process. However, because this case involves both concepts, and because both concepts are distinct, the court will reference the substantive component of the Due Process Clause as the "Substantive Due Process Clause" and the procedural component of the Due Process Clause as the "Procedural Due Process Clause."

*Brown*, 409 F.3d 1271, 1272–73 (11th Cir. 2005) (citations and internal quotation marks omitted). Fundamental rights include those rights incorporated from the Bill of Rights as well as certain nontextual but implicit rights. *See* Erwin Chemerinsky, *Constitutional Law: Principles and Policies* 513, 813 (4th ed. 2011). Additionally, the Substantive Due Process Clause protects against the wholly arbitrary abuse of government power. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S. Ct. 1708, 1716 (1998). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense," *Id.* (citation and internal quotations marks omitted). The official conduct must "shock the conscience" or violate the "decencies of civilized conduct." *Id.* at 846.

Because fundamental rights derive directly from the Constitution, the Eleventh Circuit has said that:

> areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection . . . .

*Lewis*, 409 F.3d at 1272–73 (citations and internal quotation marks omitted); *see also Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1263 (11th Cir. 2003) ("[N]on-legislative deprivations of state-created rights . . . cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrar[ily] and irrationally.") (citation omitted).

The Complaint alleges two potential deprivations of Wynn's constitutional rights: (1) the Board's ex parte, closed door meeting with Superintendent Campbell (the "Opening Meeting Violation") which denied Wynn an open meeting; and (2) the Defendant's decision to affirm her suspension (the "Suspension Violation") which denied Wynn the opportunity to attend Talladega High School.   The court will address each in turn.

### 1.    The Open Meeting Violation

To state a substantive due process claim for the Opening Meeting Violation, Wynn must have a constitutional right to an open meeting.  Wynn's Complaint does not identify the source of her right to an open meeting.  The Bill of Rights does not guarantee a right to an open meeting, and therefore, this right is not an incorporated one.  And, neither the Supreme Court nor the Eleventh Circuit has recognized a nontextual constitutional right to an open meeting.  Thus, the Court declines to find, in the first instance, that such a right is "implicit in the concept of ordered liberty."

In her Response to the Defendants' Motion to Dismiss (Doc. 8), Wynn points to the Alabama Opening Meetings Act, Ala. Code § 36-25A-1 (1975) (the "Act"), as the source of her right to an open meeting.  The Act prohibits a state

governmental body from holding an executive session[3] for any reason, other than those enumerated in the Act.  *See* Ala. Code § 36-25A-7(a).  Wynn contends that the Board's meeting with Campbell was an unauthorized executive session.

Assuming without deciding that Wynn's complaint alleges a violation of the Act, Wynn's Substantive Due Process Claim based on this violation must fail. The Act creates a state-substantive right to an open meeting.  Because this right is created solely by state law, it is not protected by the Substantive Due Process Clause under binding authority from the Eleventh Circuit.  *See Lewis*, 409 F.3d at 1272–73.

The Eleventh Circuit does recognize an exception to the general rule that state-created rights are not protected by the Substantive Due Process Clause.  The

---

[3]  The Act defines an executive session as "[t]hat portion of a meeting of a governmental body from which the public is excluded for one or more of the reasons prescribed in Section 36-25A-7(a)."  Ala. Code § 36-25A-2(2).  Section 36-25A-7 permits a governmental body to hold an executive session for, among other reasons:

> To deliberate and discuss evidence or testimony presented during a public or contested case hearing and vote upon the outcome of the proceeding or hearing if the governmental body is acting in the capacity of a quasi-judicial body, and either votes upon its decision in an open meeting or issues a written decision which may be appealed to a hearing officer, an administrative board, court, or other body which has the authority to conduct a hearing or appeal of the matter which is open to the public.

Ala. Code § 36-25A-7(a)(9).

Legislative Exception holds that "[w]here an individual's state-created rights are infringed by 'legislative act,' the substantive component of the Due Process Clause generally protects [the individual] from arbitrary and irrational action by the government." *Lewis*, 409 F.3d at 1273.  To qualify for this exception, the state actor's decision must be a legislative act.  *Id.*  Non-legislative deprivations of a state created right "cannot support a due process claim."  *Id.*

The Eleventh Circuit's has characterized legislative acts as: "apply[ing] to larger segments of-if not all of-society; laws and broad-ranging executive regulations are the most common examples."  *Lewis*, 409 F.3d at 1273.  Executive acts, on the other hand, typically, "apply to a limited numbers of persons (and often to only one person); executive acts . . . arise from the ministerial or administrative activities of members of the executive branch. The most common examples are employment terminations."  *Id.*

After careful consideration, the court finds that the Board's decision to enter executive session was an executive act.  First, even assuming the Board decided to hold an improper executive session on February 13, 2012, the decision to hold an executive session applied only to Wynn's case.  The Board did not adopt a new rule or policy which applied broadly and prospectively.  *See McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994).  Thus, the Board's decision was more akin

12

to an employment termination decision or an administrative act rather than a broad-reaching executive regulation.  Moreover, Wynn contends that the Board was acting in a quasi-judicial role when it decided her appeal.  (*See* Doc. 8 at 3.) Therefore, because the Board's decision to go into executive session was not a legislative act, this exception does not apply to Wynn.

Finally, the Complaint does not allege an abuse of official power which is sufficiently egregious to be arbitrary in the constitutional sense.  Wynn alleges that the Board improperly excluded her (and the public) from a meeting with Superintendent Campbell, and that, while behind closed doors, Campell convinced the Board to affirm Wynn's suspension.  These facts do not shock the conscience or violate the decencies of civilized conduct.  Wynn does not allege the Board colluded with Campbell to go into executive session.  Nor does she allege facts which show the Board had an unconstitutional reason for going into executive session.  In fact, the Complaint necessarily implies the Board had not yet decided Wynn's fate at the time it entered executive session.  (*See* Doc. 1 at 4) (asserting that Campbell "was allowed outside the presence of Plaintiff and counsel to persuade Board member to change their votes") (emphasis added).

Wynn implies that the Board's vote on her suspension discriminated against her on account of her race.  (Doc. 1 at 4, ¶ 31.)  However, Wynn has not alleged

facts showing the Board denied Wynn an open meeting on account of her race.

Moreover, Alabama citizens can challenge violations of the Act in court. *See* Ala. Code § 36-25-9.  The Act establishes procedures for these challenges, and authorizes a court to set aside any decision of a governmental body made while in violation of the Act.  Although the availability of postdeprivation procedures primarily concerns procedural due process, the court finds their availability further underscores that the Board decision was not arbitrary in the constitutional sense. If a governmental body errs in entering executive session, the aggrieved citizen can vindicate her rights in court.  Therefore, the Board decision does not "shock the conscience" such that it violated Wynn's rights under the Substantive Due Process Clause.

For the foregoing reasons, Wynn's Complaint fails to allege sufficient facts to show a constitutional violation relating to the Open Meeting Violation. Therefore, Wynn's substantive due process claim related to the Open Meeting Violation is due to be **DISMISSED**.

### 2.   The Suspension Violation

Turning next to Wynn's suspension, it is well settled that "[t]he right to attend a public school is a state-created, rather than a fundamental, right for the purposes of substantive due process."  *C.B. ex rel. Breeding v. Driscoll*, 82 F.3d

383, 387 (11th Cir. 1996) (citing *Plyler v. Doe*, 457 U.S. 202, 221, 102 S.Ct. 2382, 2396 (1982)).  Thus, the Defendants' decisions to affirm Wynn's suspension and punishment did not deprive her of a fundamental right.  Wynn's substantive due process claim based on the Suspension Violation is, therefore, due to be **DISMISSED**.

### C.    Procedural Due Process

To state a claim for a violation of the Procedural Due Process Clause, a plaintiff must show that (1) the defendant deprived her of life, liberty, or property interest (2) without the process required by the Constitution.  *See Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012).  The property interests protected by this Clause do not arise directly from the Constitution but from an independent source such as state law.  *See id.* (citing *Perry v. Sindermann*, 408 U.S. 593, 602 n.7, 92 S. Ct. 2694, 2700 n.7 (1972)).  The Defendants do not seriously dispute that Wynn has a protected property interest in her right to an opening meeting under the Act.  (Doc. 9 at 3.)   And, it is well settled that Wynn's right to attend Talladega High School is a protected property interest.  *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736 (1975); *Barnes*, 669 F.3d at 1305; *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 157 (5th Cir. 1961).  Therefore, the court will turn to whether Wynn received the process required by the Procedural Due

Process Clause.

The process required varies depending on the "time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902 (1976) (citation omitted).  In *Mathews v. Eldridge*, the Supreme Court adopted a three-factor balancing test to determine what process is due in a particular situation.  This test weighs (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation through the procedures used, and (3) the burden the government would face from additional or substitute procedures.  *Id.* at 335, at 903.  Although a predeprivation hearing is preferred, the Supreme Court and the Eleventh Circuit both recognize predeprivation process is sometimes impractical or impossible.  *See, e.g.*, *McKinney*, 20 F.3d at  1562–63; *see also Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996).  In such instances,  the availability of an adequate postdeprivation remedy will satisfy the requirements of the Procedural Due Process Clause.  *See McKinney*, 20 F.3d at  1562–63 (stating that when predeprivation process is impossible or impracticable, then due process is satisfied by adequate postdeprivation remedies); *Tinney*, 77 F.3d at 382.  Because the postdeprivation remedy affords a plaintiff constitutionally adequate process, the deprivation does not amount to a violation of the Procedural Due Process Clause.  *See Tinney*, 77 F.3d at 382 ("The state's action is not complete

unless and until it refuses to provide a post-deprivation remedy.")

### 1. The Open Meeting Violation

As described above in § III.B.2, the Act prohibits a state governmental body from holding an executive session except for one of several enumerated reasons. *See* Ala. Code § 36-25A-7(a). The Defendants seem to admit that the facts, as stated in the Complaint, allege an arguable violation of the Act. (Doc. 9 at 3.) However, Defendants contend that, even if the Board violated the Act, no due process violation occurred because Wynn had a constitutionally adequate postdeprivation remedy for the violation.

The court agrees with the Defendants. The rule in *McKinney v. Pate* and *Tinney v. Shores* controls here. These cases hold that, when predeprivation process is impractical or impossible, adequate postdeprivation remedies will satisfy the requirements of the Due Process Clause. Here, the court finds that predeprivation process is impractical for three reasons. First, the state cannot predict in advance when and how a governmental body will violate the Open Meetings Act. The state cannot police every meeting of a governmental body. Nor can the state feasibly authorize each and every executive session. Second, requiring predeprivation process in this situation could paralyze the government's ability to function. Officials might avoid entering an executive session lest they

violate the Constitution, yet at the same time, refrain from addressing issues which they do not want discussed in public.   Third, the private interest at issue is a citizen's right to a transparent government.  *See* Ala. Code § 36-25A-9.  An individual suffers little personal harm from an erroneous deprivation.  Moreover, public officials have incentives other than the Open Meetings Act which encourages them to avoid unauthorized executive sessions.

Having concluded that a predeprivation hearing is impractical or impossible in this situation, the court finds that Wynn's postdeprivation remedies are adequate.  *See* Ala. Code § 36-25A-9 (describing procedures to remedy violations of the Act).  For example, any citizen may challenge a violation of the Act.  Ala. Code § 36-25A-9(a)   If a court finds a violation, it can invalidate any official action taken in violation of the Act and fine the officials responsible.  §§ 36-25A-9(f) & (g).  The Act also prohibits the governmental body from paying the fine or reimbursing the official the cost.  Ala. Code § 36-25A-9(g).  The court concludes these procedures are adequate to vindicate a plaintiff's right to an open meeting under the Act.

For the foregoing reasons, the court finds that Wynn's Complaint fails to state a procedural due process claim for a violation of the Open Meetings Act.  Therefore, Wynn's procedural due process claim as it relates to the Open Meeting

Violation is due to be **DISMISSED**.

### 2.      The Suspension Violation

Defendants admit that procedural due process required them to provide

Wynn constitutionally adequate notice and a hearing before they suspended her.

Doc. 5 at 4; *see also Barnes v. Zaccari*, 669 F.3d 1295, 1305 (11th Cir. 2012).

However, Defendants contend that Wynn received all the process she was due

under the Constitution.  In *Goss v. Lopez*, the United States Supreme Court

established the process due a student facing a short term suspension:

> . . . [D]ue process requires, <u>in connection with a suspension of 10 days or
> less</u>, that the student be given oral or written notice of the charges against
> him and, if he denies them, an explanation of the evidence the authorities
> have and an opportunity to present his side of the story. . . .
>
>         There need be no delay between the time 'notice' is given and the
> time of the hearing. In the great majority of cases the disciplinarian may
> informally discuss the alleged misconduct with the student minutes after it
> has occurred. We hold only that, in being given an opportunity to explain
> his version of the facts at this discussion, the student first be told what he is
> accused of doing and what the basis of the accusation is.

419 U.S. 565, 581–82, 95 S. Ct. 729, 740 (1975) (emphasis added); *see also*

*Driscoll*, 82 F.3d at 387 n.3.  Even if the court aggregates Wynn's five (5) day out-

of-school suspension and her five (5) day in-school suspension, the total time

amounts to only ten (10) days.  Therefore, *Goss* is on point.

Goss does not require elaborate procedures before school officials may

suspend a student.  It only requires that the student receive notice of the charges, the basis for them, and an "opportunity to explain [her] version of the facts." *Goss*, 419 U.S. at 582, 95 S. Ct. at 740.  The Complaint clearly alleges that Wynn received notice of the charges and an opportunity to explain herself before she was suspended.  (Doc. 1 at 2.)  Therefore, Wynn received all the process required by the United States Constitution.

Of course, schools are free to afford students more process than is constitutionally required.  For instance, if a state-supported school promises students additional procedural protections prior to a suspension (either through a student handbook or otherwise) and the student has a legitimate claim of entitlement to those procedural protections, then the state can violate the Procedural Due Process Clause when it fails to follow these additional (but not constitutionally required) procedures.  *See, e.g.*, *Barnes*, 669 F.3d  at 1303–05 (holding that a student code of conduct created a legitimate claim of entitlement to certain procedures before a student is suspended or expelled).

In this case, Wynn's Complaint does not allege she has a legitimate claim of entitlement to additional procedures not guaranteed by the Constitution.  Wynn has not attached a copy of Talladega High School's procedures for student suspensions.  Nor did she attach a copy of the Board's procedures for hearings or

20

appeals of student disciplinary decisions.

For the foregoing reasons, Wynn has not alleged facts establishing that the Defendants violated her rights under the Procedural Due Process Clause when they affirmed her suspension.  Therefore, Wynn's procedural due process claim related to the Suspension Violation is due to be **DISMISSED**.

### D.    Equal Protection

The Supreme Court has long recognized "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074 (2000).  To prevail on a "class of one," selective-enforcement claim, a plaintiff must show (1) she was treated differently from other similarly situated persons, and (2) the Defendant treated the plaintiff differently for an unconstitutional reason.  *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006);  *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996).  To be similarly situated, individuals must be similar in all material respects.  *See Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) ("To be considered 'similarly situated,' comparators must be 'prima facie identical in all relevant respects.'"(citations omitted)).   "Indeed, [i]t

is clear that similarly situated individuals must be very similar indeed." *Id.* (citation omitted).

Wynn contends that she was suspended while other students, who admitted to participating in the brawl, were not suspended.  Yet, her Complaint fails to allege facts showing she was treated differently from a similarly situated student. The Complaint alleges that students who admitted to participating in the brawl were not disciplined.  But, these students are not similarly situated to Wynn.  *See Davis v. Houston Cnty., Ala. Bd. of Educ.*, 291 F. App'x 251, 252 (11th Cir. 2008) (unpublished); *Roy v. Fulton Cnty. Sch. Dist.*, 288 F. App'x 686, 688 (11th Cir. 2008) (unpublished).  These student admitted to participating in the fight while Wynn has consistently denied any participation.

Wynn's Complaint alleges that she presented the Board with significant evidence that she did not participate in the December 15 brawl.  But, the court is not reviewing whether the Superintendent or the Board made the right decision in affirming Wynn's discipline.  The court is deciding whether Wynn's Complaint states a claim for which the court can grant relief.  *See Craig v. Selma City Sch. Bd.*, 801 F.Supp. 585, 594 (S.D.Ala. 1992).  Therefore, the question of whether or not Wynn actually participated in the December 15 brawl is irrelevant to the court's legal analysis of this claim.

Because Wynn's Complaint fails to state a claim under the Equal Protection Clause, this claim is due to be **DISMISSED**.

## IV. CONCLUSION

For the forgoing reasons, to the extent Wynn seeks an injunction against the Board and her reinstatement to the cheerleading squad, Wynn's claims are **MOOT**.  Wynn's remaining claims fail to state a claim for which this court can grant relief.  Therefore, the Defendants' Motion (Doc. 4) is due to be, and hereby is, **GRANTED**.  Accordingly, Wynn's remaining claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** this 9th day of October, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge